**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

BRIAN WENDELL SMITH,
  *Defendant-Appellant.*

No. 01-4509

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-00-123)

Submitted: September 28, 2001

Decided: November 14, 2001

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

### COUNSEL

Paul G. Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Ruth E. Plagenhoff, United States Attorney, Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Brian W. Smith was charged with two counts of impersonating a federal officer in violation of 18 U.S.C. § 912 (1994). Smith entered a plea of guilty on count 1 on March 20, 2001. The Government dismissed Count 2.

The charges against Smith arose from his impersonation of a deputy United States Marshal. Smith convinced the victim, Theresa Craighead, that he was a deputy marshal trying to protect her from drug dealers, including her ex-husband. Under this pretext, Smith convinced Craighead to let him move in with her, to give him cash, and to rent cars for him. Smith also stole cash from Craighead and forged one of her checks.

On appeal, Smith first argues that his indictment should be dismissed without prejudice because he was not afforded a preliminary appearance within ten days of his initial appearance, as required by 18 U.S.C. § 3060 (1968). We review *de novo* a challenge by a defendant to the lawfulness of an indictment. *See United States v. Mancuso*, 42 F.3d 836, 847 (4th Cir. 1994). Smith's initial appearance following his arrest occurred on November 16, 2000. A grand jury indicted Smith on December 12, 2000. We conclude that this indictment obviated the remedy Smith could have obtained from the denial of his preliminary hearing.

The exclusive purpose of a preliminary hearing is to permit a determination of probable cause. Normally, a magistrate judge will make this finding in a preliminary hearing, yet federal courts have long recognized that "an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause . . . ." *Gerstein v. Pugh*, 420 U.S. 103, 103 n.19 (1975). *See also United States v. Parrish*, 372 F.2d 453, 466 (4th Cir. 1967) ("[O]rdinarily, the return on an indictment constitutes a determination of probable cause and obviates the necessity for a preliminary hearing.").

Under § 3060, Smith was entitled to discharge following the tenth day of his detention, "without prejudice to the filing of further criminal proceedings," *United States v. Aranda-Hernandez*, 95 F.3d 977 (10th Cir. 1996), in this case, the grand jury's indictment. Once the grand jury returned an indictment against Smith, his right to discharge pursuant to § 3060 ceased.

Smith also argues the district court erred in sentencing him. On issues arising under the United States Sentencing Guidelines, we review the district court's factual findings for clear error and legal interpretations *de novo. See United States v. Colton*, 231 F.3d 890, 911 (4th Cir. 2000). Under *U.S. Sentencing Guidelines Manual* § 2J1.4 (2000), the corresponding offense guideline to 18 U.S.C. § 912, the district court utilized a cross reference* and determined that Smith's impersonation was an attempt to commit the offense of fraud. Upon Smith's plea of guilty to Count 1, the court accordingly sentenced Smith to 24 months imprisonment under *U.S. Sentencing Guidelines Manual* § 2F1.1 (2000), the fraud guideline.

Smith argues the district court erred in its sentence because the statutory provisions' portion of section 2F1.1's commentary lists a large number of offenses covered by section 2F1.1, but does not include § 912. However, the district court properly employed the statutory index of USSG App. A to determine § 912's applicable offense guideline, § 2J1.4. After making the initial determination to apply § 2J1.4, the district court then applied the section's cross reference. There can be no dispute that the district court correctly chose § 2J1.4 as the applicable offense guideline according to the statutory index of USSG App. A. Once the applicable guideline is established, *U.S. Sentencing Guidelines Manual* § 1B1.1 (2000) instructs the court in pertinent part to determine the base offense level and apply any appropriate cross references. Moreover, in accordance with § 1B1.3, which delineates relevant conduct, "cross references in Chapter Two . . . shall be determined on the basis of . . . all acts and omissions

---

*According to § 2J1.4(c)(1), "[i]f the impersonation was to facilitate another offense, [the district court should] apply the guideline for an attempt to commit that offense, if the resulting offense level is greater than the offense level determined [under § 2J1.4]."

. . . committed . . . that occurred during the commission of the offense of conviction . . . ." USSG § 1B1.3(a). The district court in this case properly determined section 2J1.4's cross reference on the basis of Smith's attempt to defraud Craighead and by use of that cross reference, incorporated section 2F1.1 and all appropriate specific offense characteristics to calculate the applicable guideline range under § 2J1.4. *See United States v. Carroll*, 3 F.3d 98, 101 (4th Cir. 1993) ("Under the sentencing guidelines, the offense of conviction dictates selection of the proper chapter two guideline, while the relevant conduct guideline, U.S.S.G. § 1B1.3, captures the real offense behavior and the characteristics of the defendant through specific offense characteristics and cross references.") (internal citations omitted).

Smith further contends the statutory provision portion of the offense guideline commentary for section 2F1.1, the fraud guideline, precludes the application of the fraud guideline to § 912 because § 912 is not an enumerated statute within the statutory provisions portion of the commentary to § 2F1.1. In support of this position, he relies upon *United States v. Saavedra*, 148 F.3d 1311, 1315 (11th Cir. 1998), for the proposition that under "the doctrine of *expressio unius est exclusio alterius*, the express indication that an offense guideline applies to several statutes of conviction 'strongly suggests' that it does not apply to a statute that is not listed." (Internal citation omitted).

This argument misapprehends the entire purpose of using a cross reference to earmark relevant conduct. As *Saavedra* itself recognizes, the statutory provisions portion of an offense guideline commentary lists statutes of *conviction*, for which the district court immediately selects the corresponding offense guideline. However, the statutory provisions portion of an offense guideline commentary does not take cross references into account. When the offense of conviction's corresponding offense guideline contains a cross reference, the district court must substitute the applicable cross referenced offense guideline in order to calculate the statute of conviction's offense guideline range. In Smith's case, he was never convicted of any criminal statute except § 912. However, in considering Smith's relevant conduct, the district court properly cross referenced section 2F1.1 to take into account Smith's fraudulent conduct in determining the proper guideline range under section 2J1.4. *See Carroll*, 3 F.3d at 102 ("[A]ll

guideline cross references . . . are no more than devices for measuring the seriousness of the offense and the conduct for which the sentence is imposed . . . .").

Accordingly, we affirm the district court's judgment. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*