[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15413
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cr-00059-RV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KADEEM C. MOORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 26, 2014)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

A Northern District of Florida grand jury indicted Kadeem Moore for possession with intent to distribute cocaine, cocaine base, and hydrocodone, in violation of 21 U.S.C. § 841(a)(1) ("Count One"), and (2) for being a felon in possession of a firearm, a Ruger 9 millimeter pistol, in violation of 18 U.S.C. § 922(g)(1) ("Count Two"). Moore subsequently moved the District Court to suppress evidence that was obtained and statements he made during a traffic stop on October 6, 2012, in Pensacola, Florida. He argued that the stop violated the Fourth Amendment prohibition against unreasonable searches and seizures because (1) the traffic stop was not justified, and (2) even if it was, the stop was unreasonably prolonged.[1]

The District Court denied Moore's motion, and pursuant to a plea agreement, he entered conditional pleas of guilty to both counts of the indictment, reserving his right to challenge the suppression ruling on appeal. The District Court thereafter sentenced Moore to concurrent prison terms of 110 months. Moore now appeals the District Court's suppression ruling and his sentences—on the ground that they are procedurally unreasonable because the court erred in determining that Count Two involved four or more firearms. We affirm.

---

[1] In *Mapp v. Ohio,* 367 U.S. 643 (1961), the Supreme Court ruled that the Fourth Amendment applies to the States by way of the Due Process Clause of the Fourteenth Amendment.

2

I.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Lewis,* 674 F.3d 1298, 1302 (11th Cir. 2012). Rulings of law are reviewed *de novo*, while findings of fact are reviewed for clear error, in the light most favorable to the prevailing party, here, the Government. *Id*. at 1302-03. We afford considerable deference to the district court's credibility determinations because the court is "in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (quotations omitted).

The Fourth Amendment protects individuals from unreasonable searches and seizures. *Lewis*, 674 F.3d at 1303. A court must examine the totality of the circumstances in order to determine whether a search or seizure is reasonable under the Fourth Amendment. *Id.* "Rigid time limitations and bright-line rules" are not appropriate in determining reasonableness. *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001).

When police stop a motor vehicle, even for a brief period, a Fourth Amendment "seizure" occurs. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may seize a suspect for a brief, investigatory stop, but that stop "must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007) (quotations omitted). Also, "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Id.* (quotations omitted). The officer's subjective intentions play no role in the legal analysis. *Whren,* 517 U.S. at 813, 116 S.Ct. at 1774.

An officer may prolong a traffic stop in two circumstances. *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003). First, officers may "prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check." *Id.* (quotations omitted); *see also Purcell*, 236 F.3d at 1278-79 (officer's request for criminal history as part of a routine computer check does not violate Fourth Amendment so long as the check does not unreasonably prolong the stop). Officers may also ask questions, even those unrelated to the original purpose of the stop, so long as the questioning does not "measurably extend the duration of the stop." *United States v. Griffin*, 696 F.3d 1354, 1362 (11th Cir. 2012) (quotation omitted), *cert. denied*, 134 S.Ct. 956

4

(2014).  Second, an officer may prolong a stop if he has "articulable suspicion of other illegal activity." *Boyce*, 351 F.3d at 1106 (quotation omitted); *see also United States v. Spoerke*, 568 F.3d 1236, 1248-49 (11th Cir. 2009) (extension of stop must be based on an "objectively reasonable and articulable suspicion" that illegal activity had occurred or was occurring).  "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Simms*, 385 F.3d 1347, 1354 (11th Cir. 2004) (quotation omitted).  Reasonable suspicion thus requires more than "an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (quotation omitted).  Generally, when all computer background checks have been performed, the citation is written, and the police officer returns the driver's license, the traffic violation investigation is complete and the driver is free to go.  *See Boyce,* 351 F.3d at 1107.

A Fourth Amendment violation may occur when police conduct a dog sniff and uncover contraband while an individual is unlawfully detained, *e.g.,* "during an unreasonably prolonged traffic stop." *Illinois v. Caballes*, 543 U.S. 405, 407-08, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005).  Moreover, "[t]he police cannot base their decision to prolong a traffic stop on the detainee's refusal to consent to a search." *Boyce*, 351 F.3d at 1110.  However, a dog sniff that does not

5

unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and based on this principle, the Supreme Court has rejected the notion that the mere act of a dog sniff transforms a lawful traffic stop into a drug investigation that was unlawful because it was not supported by reasonable suspicion. *Caballes,* 543 U.S. at 408-09, 125 S.Ct. at 837-38 (holding that the Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog to sniff a car during a legitimate traffic stop).

Here, the duration of the traffic stop was approximately 24 minutes, starting when the police officer stopped the car and concluding when a drug-sniffing dog alerted to the drugs. The District Court credited the testimony given by the police officer at the suppression hearing and concluded that, under the circumstances, 24 minutes was a reasonable duration for the traffic stop. Specifically, the court found, based on the officer's testimony, that much of that time was spent gathering and re-verifying information from the car's occupants, running driver's license and warrant checks, and writing a citation using a computer system and statute the officer was unfamiliar with. Accepting the version of facts adopted by the court, we cannot say that the court erred in concluding that the duration of the stop here was reasonable and constitutional. Accordingly, Moore's convictions are affirmed.

II.

Moore argues that the District Court erred in applying a two-level enhancement to the offense level under U.S.S.G. § 2K2.1(b)(1)(A) because the Government failed to prove his possession of four firearms by a preponderance of the evidence. We review the court's application of the sentencing guidelines *de novo* and its findings of fact for clear error. *United States v. Demarest*, 570 F.3d 1232, 1239 (11th Cir. 2009). For sentencing purposes, possession of a firearm involves a factual finding. *United States v. Stallings,* 463 F.3d 1218, 1220 (11th Cir. 2006). "When a defendant challenges one of the factual bases of his sentence as set forth in the [PSI], the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995). Similarly, our precedent authorizes a district court to consider relevant conduct in fashioning a defendant's sentence so long as that conduct has been proven by a preponderance of the evidence. *United States v. Saavedra,* 148 F.3d 1311, 1314 (11th Cir. 1998); *see also United States v. Valarezo-Orobio*, 635 F.3d 1261, 1264 (11th Cir. 2011) (unless otherwise specified, a convicted defendant's guideline range is determined on the basis of all relevant conduct). A preponderance of the evidence standard "requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir.) (quotations omitted), *cert. denied*, 133 S.Ct. 629 (2012). "[T]he district court's factual findings for

7

purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the [presentence investigation report], or evidence presented during the sentencing hearing." *United States v. Louis*, 559 F.3d 1220, 1224 (11th Cir. 2009) (quotations omitted) (alterations in original) (upholding enhancement of a defendant's sentence pursuant to § 2K2.1(b)(1)(A) on the basis of criminal conduct not charged in the indictment).  We review the application of the Guidelines' relevant conduct provision to the facts for clear error.  *United States v. Amedeo*, 370 F.3d 1305, 1313 (11th Cir. 2004).

Under the Guidelines, if a pertinent firearm offense involved three to seven firearms, a two-level increase applies.  U.S.S.G. § 2K2.1(b)(1)(A).  Only those firearms that were "unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" are to be counted under § 2K2.1(b)(1).  § 2K2.1, comment. (n.5).  Possession of a firearm may be either actual or constructive.  *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011).  Under § 1B1.3(a), specific offense characteristics are determined on the basis of all acts and omissions committed by the defendant in relation to the subject offense.  § 1B1.3(a)(1)(A).  For firearm-related offenses falling under § 2K2.1, relevant conduct includes all acts and omissions that were part of "the same course of conduct or common scheme or plan as the offense of conviction."  § 1B1.3(a)(2); *see* § 3D1.2(d).

8

"Same course of conduct" and "common scheme or plan" are terms of art defined in the commentary to § 1B1.3.  For multiple events to form a common scheme or plan, they must "be substantially connected to each other by at least one common factor, such as . . . [a] common purpose, or similar *modus operandi*." § 1B1.3, comment. (n.9(A)).  Two or more events will form the same course of conduct if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3, comment. (n.9(B)).  In evaluating whether two or more offenses meet this test, the sentencing court should consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.; see also United States v. Maxwell,* 34 F.3d 1006, 1011 (11th Cir. 1994) (concluding that the court should consider "similarity, regularity, and temporal proximity" between the offense of conviction and the uncharged conduct).  The Guidelines commentary makes clear that § 1B1.3(a)(2) is designed to take account of "a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." § 1B1.3, comment. (backg'd.).

Although it is likely that the District Court here did not clearly err in determining that Moore possessed four firearms as part of "relevant conduct" under U.S.S.G. § 1B1.3, and so properly applied the § 2K2.1(b)(1)(A)

9

enhancement, we need not decide the enhancement issue in this case because a decision either way will not affect the outcome.  Here, the court explicitly stated that it would have imposed the same 110-month sentence even without the enhancement.  Given Moore's extensive criminal history involving drugs and other offenses, a 110-month sentence imposed without the enhancement would still be both within the applicable guideline range and reasonable under the circumstances. *See United States v. Keene*, 470 F.3d 1347, 1349-50 (11th Cir. 2006).  Therefore, any error was harmless, and Moore's sentences are due to be affirmed.

AFFIRMED.